DAVID L. O'NEAL v. CLARA M. O'NEAL.

[48 South. 623.]

INFANTS. *Custody of. Controversy between parents. Habeas corpus. Probationary period.*

Where neither father nor mother showed superior fitness as a parent, it was proper, after divorce, to intrust a two-year-old child to the mother for a probationary period of six months, reserving the right at the end of that time to change the custody of the child if the mother failed in her parental duty, though the father was much better able financially to care for it.

FROM the judgment of HON. G. GARLAND LYELL, Chancellor, rendered in *habeas corpus* proceedings, heard and determined at Jackson, Mississippi.

Mrs. O'Neal, appellee, was the petitioner, and O'Neal, her divorced husband, appellant, was defendant in the proceeding

before the chancellor. From a decree in petitioner's favor the defendant appealed to the supreme court.

The controversy involved the custody of their infant daughter, at the time of the institution of the proceedings about eighteen months old, and, according to the contention of the petitioner, wrongfully withheld from her. In the decree granting the divorce nothing was adjudged as to the custody of the child. The mother retained possession of the child until it was taken from her home by the father, after which this proceeding was instituted. The chancellor awarded temporary custody to the mother. A supersedeas of the chancellor's judgment pending the appeal therefrom to the supreme court was obtained, and the father retained possession of the child. Before the appeal came on for determination in the supreme court, the probationary period fixed by the chancellor for the mother's custody of the infant expired.

*May & Sanders,* for appellant.

We are constrained from the facts of this record to announce to this court the conscientious belief that envy, jealousy, hatred, and the desire for notoriety is responsible for this proceeding and not a mother's love. In view of these facts we respectfully insist that it was gross error for the chancellor to experiment in the hope that the presence of the child might serve to restrain or perhaps reform its mother. If the testimony of appellant's witnesses is to be believed, and the acts indicated from the character of her associations with the class of companions as shown by the record may be accepted as true, then may not the influence of such a participant result in so warping the character of the innocent as to result in its disease or destruction? We do not understand it to be the policy of the court having exclusive jurisdiction over infants as its wards to resolve such wards into instruments of reform. We respectfully submit that in view of the fact that it devolved upon the appellee to clearly prove her right to the custody of this child by

a preponderance of the evidence, and that the only testimony which shows, or tends to show, any such right is that of her own, and that it stands in direct conflict and is contradicted in every particular, by the testimony of six or seven other witnesses and the records of the court; instead of establishing her right, the contrary has been proved; and we think the chancellor's decree bears out our contention. Indeed, we think that if such acts of indiscretion on the part of appellee since the date of the decree as were shown to have been committed prior to the rendition of the decree, were as clearly shown to the chancellor, that he himself would have taken from her the custody of the little girl and passed her to her father.

*Hallam & Cooper* and *C. W Girdlestone,* for appellee.

A woman may through ignorance be indiscreet, she may transgress the bounds of propriety without being inherently bad, but the inborn love of her latest born dwells ever in her bosom, for

> "A mother is a mother still—
> The holiest thing alive."

On the question as to who is morally better fitted to care for this little child, we respectfully submit that if the weight is with either side, it is with the mother. All things else being equal, therefore, the urgent need by the child of a mother's love, of a mother's care and attention, demands at the hands of this court an affirmance of this case. Should the father prevail, the child must be left to the care of a step-mother of whom nothing else is known than the not very commendable circumstance that she married D. L. O'Neal five days after he had procured a divorce from the appellee—having waited complacently by for the chance to step into the shoes of the divorced wife. Her love for the child, if it does not ripen into hate, her interest in its welfare, could not possibly equal that of the mother who risked her own life that this second principal of nature might live in the world. Although the court may be-

lieve that Mrs. O'Neal is the abandoned woman that the appellant would have the court believe her to be, yet we submit that at the tender age of this child, the child's moral character could not be hurt or influenced to any degree by its mother's conduct. It will be years before the mind of this child is sufficiently developed to understand right from wrong, and certainly if the facts disclosed by the record, if true, were presented to that child's mind they could have no influence over it. It has been by the most diligent effort on the part of the appellant, for grown up men and women, whose minds are developed, to discover even a suspicion of immorality in the conduct of the appellee, and certainly a little child could not discover such immorality or be influenced by it. But we do not wish to be understood to admit to the slightest extent that the conduct of the appellee has been immoral.

The cases of *Cocke v. Hannum,* 39 Miss. 423; *Foster v. Alston,* 6 How. (Miss.) 461; *McShan v. McShan,* 56 Miss. 413; *Johns v. Johns,* 57 Miss. 530; *Moore v. Christian,* 56 Miss. 411, support the contention that in a contest between parents the mother is to be preferred, and especially if the child is very young and so requires a mother's care. The case of *Hibbette v. Bains,* 78 Miss. 706, 29 South. 80, has no reference to a contest between parents. That was a contest between the father and two aunts; and while the opinion in that case is masterly, the case is not controlling here except insofar as it holds that the interest of the child is the governing consideration.

The chancellor was in a better position to know what testimony was true and what false than is this court. He saw the witnesses before him and observed their demeanor on the witness stand; and on all disputed questions of fact has decided this case in favor of the appellee. His decision rests on the same ground and is due the same respect as the verdict of a jury, and unless that finding on the facts was palpably wrong this court should not disturb his decree.

The decree was a temporary decree, and was correct on the authority of *Turner v. Turner,* 93 Miss. 167, 46 South. 413, and *Wallace v. Wallace,* 93 Miss. 298, 46 South. 398; and if this court decides to take jurisdiction of the case on its merits, we respectfully submit that from the whole record it is manifest that it is to the best interest of the child, at any rate during its tender years, that it should be placed in the custody of its mother.

Argued orally by *Geo. W. May* and *Albert H. Whitfield, Jr.,* for appellant, and by *L. C. Hallam,* for appellee.

FLETCHER, J., delivered the opinion of the court.

On July 27, 1908, the chancellor on a *habeas corpus* hearing, after full proof, rendered a decree awarding to appellee the temporary custody of her infant until the January, 1909, term of the chancery court, at which term she was required to present herself and child to the court, there "to receive and abide by such further orders pertaining to the custody of said child as at that time shall appear to be to the best interests of said child." The court further permitted the appellant, father of the child, to visit it at all reasonable times. It was evidently the view of the chancellor that this child of tender years could safely be intrusted to its mother for a time at least, provided she proved herself able to support it and demonstrated her fitness to rear it. The court, as we think, wisely reserved the right, after the lapse of a six months' probationary period, to change the custody of the child in case the mother failed in her parental duty.

An examination of this voluminous record, abounding in charges and countercharges, criminations and recriminations, convinces us that the chancellor's view was correct. We need not exhaustively review the testimony. Suffice it to say that many of the charges against both husband and wife were not satisfactorily proved, and we think that neither litigant can be said to have demonstrated their pre-eminently superior fitness as

a parent. True, the father is financially far better qualified to give the child the comforts, if not the luxuries, of life; but balanced against this consideration is the powerful influence of a mother's love and tenderness. The child is but two years old, and we think that at such an age the interest of the infant will not suffer in the arms of a mother, though she eats only the bread of comparative poverty.

We commend the action of the chancellor, and affirm his decree so far as may be under the anomalous situation that has arisen. This situation is due to the fact that the chancellor's decree was superseded and the custody of the child retained by the father. The probationary period has now expired, so that the decree cannot now be literally complied with. However, upon the return of the cause to the chancery court, a supplemental decree can be entered in vacation, if the chancellor shall so desire, creating a new period of probation, and directing the mother and child to report to the next or some subsequent term of the court, in accordance with the manifest scheme of the decree appealed from. The custody of the child will, upon the filing of the mandate in the court below, be returned to appellee, there to rest until further directed by the chancery court.

*Affirmed and remanded.*

WHITFIELD, C. J., delivered the following opinion, favoring a dismissal of the appeal.

I express no opinion on the merits of this case, for the reason that I think the extent of our decree should be to merely dismiss the appeal. The decree of the court below, set out in the opinion in chief, is merely a provisional one, awarding the custody of the child to its mother until a set time, to wit, the January term, 1909, at which time all parties were to be present, and, presumably, the permanent custody awarded. The January term of the chancery court has long since passed. Owing to delay in getting the appeal before

us such lapse of time has intervened between the date of the provisional decree and the hearing of the appeal from that decree that any decree we could now render would be purely nugatory. We can only deal with the case made by the record, with the precise decree appealed from. If we affirm that decree, what do we affirm? Simply that the court was right in awarding the custody until the January term; but that is an idle declaration, since that term has long since passed. Again, should we reverse, we would merely hold that the custody should not have been awarded until the January term; but that would be equally idle for the same reason, to wit, that that term has long since passed. The futility, therefore of any decree on the present state of the record arises out of the fact that the chancellor made an award of the custody only until a time now long passed. In 2 Cyc. p. 535, it is said: "Mere lapse of time might create this condition"—that is, a condition where an appellate court could only properly dismiss the appeal. And at page 533 it is said: "Hence it is not within the province of appellate courts to decide abstract or hypothetical questions, disconnected from the granting of actual relief, or from the determination of which no practical result can follow."

My view is that the only proper form of decree we can now enter here is one dismissing the appeal, and leaving the learned chancellor below to make such new award, temporary or permanent, of the custody of the child, as to him may seem wise, especially as this court does not now decide, in the opinion in chief, anything as to the permanent custody of the child. Practically it makes no difference whether the view taken by the majority prevails or the view I take prevails, since, if the appeal be dismissed, the appellee would equally have to surrender the custody of the child to its mother, subject to such further award of that custody as the chancellor may choose to make.

I write only because I think it is important that we should

be careful to render, as a matter of practice, the proper decree in form, which is, as I have stated, in my view, merely one dismissing the appeal.